IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **DEREK N. JARVIS,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 15-2226** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |
| | ************ | |

## MEMORANDUM OPINION GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff *pro se* Derek N. Jarvis[1] seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 20), Defendant's Motion for Summary Judgment (ECF No. 21), and Plaintiff's Opposition to Defendant's Motion for Summary Judgment (ECF No. 23).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No

---

[1] Derek N. Jarvis is "a frequent filer in this Court" noted for "his propensity for filing frivolous lawsuits." *Jarvis v. Grady Mgmt., Inc.*, Civil No. PJM 13-3853, 2015 WL 363620, at *1, *3 (D. Md. Jan. 22, 2015) (citing cases).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

hearing is necessary.  L.R. 105.6.  For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 21) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 20) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

# I

## Background

Plaintiff was born in 1960, has two years of a college education, and previously worked as a customer service representative.  R. at 19, 298, 303.  Plaintiff protectively filed applications for DIB and SSI on July 28, 2011, alleging disability beginning on October 23, 2009, due to back, neck, and knee pain from a motor vehicle accident.  R. at 18, 266-74, 294, 297.  The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 87-124, 131-55.  On February 19, 2014, ALJ Eugene Bond held a hearing in Washington, D.C., at which Plaintiff *pro se* and a vocational expert ("VE") testified.  R. at 26-42.  On March 28, 2014, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of October 23, 2009, through the date of the decision.  R. at 11-25.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on June 11, 2015.  R. at 1-7.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On July 29, 2015, Plaintiff filed a *pro se* complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was

reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

### A.     Opinion Evidence

Following Plaintiff's motor vehicle accident on October 23, 2009, Joel Fechter, M.D., on December 18, 2009, examined Plaintiff (R. at 363-66, 384-86, 395-97, 400-02), who complained of neck and low back pain, as well as numbness and tingling in the left upper extremity.  R. at 364, 384, 395, 400.  The ALJ noted in his decision:

> [Plaintiff] reported using Motrin for pain relief.  On examination, Dr. Fechter noted tenderness to the paraspinal muscles, as well as the midline bilaterally in the lumbar and cervical spine, and range of movement with pain in both areas.  X-rays revealed "reversal of the normal cervical lordosis and some diffuse mild disc space narrowing" in the cervical spine and "mild spur formation" at L4 and L5 in the lumbar spine.  Dr. Fechter assessed [Plaintiff] with cervical and lumbar strains and recommended physical therapy, as well as use of Ibuprofen and Fexmid."

R. at 18.

On October 19, 2011, Doriscine Colley, M.D., conducted a consultative musculoskeletal examination of Plaintiff (R. at 353-58):

> [Plaintiff] presents with persistent lower back and neck pain but also reports knee and a shoulder pain.  He states these symptoms stem from being in multiple auto accidents between 1987-2009.  He underwent a brief courses [sic] of therapy after each accident and may have had some x-rays but never told that he needed surgery or blocks.  He denies having had any MRIs.  He states he would get better after each accident but his symptoms would soon flare up again.  His most recent accident was in October 2009 and he reports having had a cervical and lumbar spine x-rays which revealed arthritic changes as well as bone spurs in the lumbar spine.  He reports slipping on some snow in late 09 which resulted in a [right] knee injury.  During that time he experienced some swelling of that knee.  He states he was able to undergo some therapy for the knee but his knee never improved.  More recently he reports [right] heel and [left] shoulder pain which has not been evaluated.

> He has been diagnosed with mild kidney failure since 1992 but it has not gotten worse, which [Plaintiff] attribute[s] this to taking alternative or homeopathic regimen.  He is not taking any prescribed medications.  He is not under doctors [sic] care at this time because he does not have any health coverage.  He reports sensory changes described as tingling in the base of the neck and sometimes into the [left] fingers.  He denies bowel or bladder changes.  He has [a] back and or knee brace which he did not wear today.  Functional limitations expressed by [Plaintiff] include reaching, lifting, bending, walking more than 2 blocks, standing more than 5 minutes, sitting more than 60 minutes, [and] lying more than 60 minutes.  On the scale of 0 to 10 with zero being pain free and 10 being excruciating pain, [Plaintiff] expresses his current pain level at 9-10/10 for the neck and back, 7-8 for the [right] heel and only expresses discomfort not pain in the [right] knee.  He is presently taking [over-the-counter] pain medications.  There are no medical records to review.

R. at 353.  On examination, Dr. Colley noted Plaintiff's "[n]ormal gait and station with good cadence and foot placement[,] i.e. heel-toe movement."  R. at 354.  "No limp.  [Plaintiff] is able to come up on his heels and toes without difficulty.  [Plaintiff] demonstrated an erect and functional posture.  No ambulatory aide [sic] required."  R. at 354.  Dr. Colley also noted a negative result on straight-leg-raise testing.[3]  R. at 354.  Dr. Colley further evaluated Plaintiff's functional status:

> [Plaintiff] able to sit, stand, and go from supine to prone and back to standing independently.  He self limited with all lifting on the [right] and avoid lifting using the [left] upper limb.  He was able to bend forward but did not pick up light stool.  He was able to squat, stoop and carry light objects.  He is able to go up and down stairs with railing independently using a normal alternating pattern.

R. at 354.  Dr. Colley opined that, "[d]ue to the reported underlying mild Kidney Failure, his medications would have to be chosen carefully."  R. at 355.  The ALJ noted that "Dr. Colley found no neurological deficits, loss of strength, or limitation of range of movement.  She opined

---

[3] The "straight leg raising test is a test done during a physical examination to determine whether a patient with low back pain has an underlying herniated disk.  The straight leg raising test is positive if the patient experiences pain down the back of the leg when the leg is raised."  *Miller v. Astrue*, No. 1:09-CV-1257 SKO, 2010 WL 4942814, at *1 n.2 (E.D. Cal. Nov. 30, 2010).

that [Plaintiff] 'most likely' had some underlying degenerative changes, but remained 'very functional.'" R. at 18; *see* R. at 354-55.

On October 28, 2011, a state agency medical consultant, Nisha Singh, M.D., assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 90-92, 97-99. Dr. Singh opined that Plaintiff could (1) lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 91, 98. Because of his low back and right knee pain, Plaintiff occasionally could climb, stoop, and kneel, and he could balance, crouch, and crawl without limit. R. at 91-92, 98-99. Plaintiff had no manipulative, visual, communicative, or environmental limitations. R. at 92, 99. Dr. Singh opined that Plaintiff's statements were partially credible. R. at 92, 99. On May 14, 2012, another state agency consultant, Bert Spetzler, M.D., found that Plaintiff's impairments were not severe. R. at 110, 120.

On February 23, 2012, Plaintiff was involved in another motor vehicle accident. R. at 360. At an urgent care center the following day, Ishtiaq Malik, M.D., treated Plaintiff, who complained of back and shoulder pain. R. at 359-62. Plaintiff did not complain, however, of any foot symptoms; tingling or numbness; or knee, neck, leg, or arm pain. R. at 360.

B.     **Hearing Testimony**

1.     **Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in his decision:

> [Plaintiff] has alleged disability due to pain in his neck, back, bilateral knees, and the bottom of his feet. He testified at the hearing that he lives with family and they do all his cleaning, cooking, and grocery shopping. In a typical day, he goes over various legal documents and watches television. His pain medication, which, as of February 2012 included Naproxen and Flexeril [R. at 343-45], only helps sometimes. In statements dated February 25, 2012, [Plaintiff]

indicated that his pain made bending, lifting, sitting, walking, and standing difficult.  He also indicated difficulty sleeping due to pain.

R. at 17-18; *see* R. at 30-35, 315-26.

**2.      VE Testimony**

The VE testified that a hypothetical individual with Plaintiff's same age, education, and work experience with the RFC outlined below in Part III could perform the unskilled, light[4] jobs of general office helper, machine tender, or laundry worker.  R. at 36-37.  With the exception of his testimony regarding a sit-stand option, the VE's testimony was consistent with the *Dictionary of Occupational Titles*.[5]  R. at 38.  Further, no work would be available to someone whose productivity was less than 80% of an employer's requirement.  R. at 38-39.

**III**

**Summary of ALJ's Decision**

On March 28, 2014, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of October 23, 2009; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R.

---

[4] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. §§ 404.1568(a), 416.968(a).  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  *Id.* §§ 404.1567(b), 416.967(b).

[5] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).  "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a general officer helper, machine tender, or laundry worker.  R. at 16-20.  The ALJ thus found that he was not disabled from October 23, 2009, through the date of the decision.  R. at 20.

> In so finding, the ALJ found that Plaintiff had the RFC
>
> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he requires the ability to alternate between sitting and standing at will; he is limited to understanding, remembering, and carrying out instructions for simple, routine tasks; he can interact with coworkers, supervisors, and the public no more than occasionally; he can use his judgment to make simple decisions occasionally; he is unable to perform work that requires satisfaction of production pace; and he is limited to low stress work that does not involve production standards, changes generally, and judgment changes.

R. at 17.  The ALJ also considered Plaintiff's credibility and found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  R. at 18.  The ALJ found that Plaintiff's "allegations are not considered fully credible because there is just not sufficient medical evidence to support them."  R. at 18.  The ALJ further gave "great weight" to Dr. Colley's opinion.  R. at 18.  The ALJ explained that his RFC assessment "takes into consideration the mild physical and mental limitations expected to result from [Plaintiff's] mild impairments."  R. at 19.

## IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period

of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."   42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work

activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[6]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.    20 C.F.R.  §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R.  §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The Commissioner also will consider certain non-medical

---

[6] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R.  §§ 404.1521(b), 416.921(b).   These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

If an ALJ finds that a claimant, who has medical evidence of drug addiction or alcoholism, is disabled, the ALJ must then determine whether the addiction or alcoholism is a contributing material factor to the determination of disability. *Id.* §§ 404.1535(a), 416.935(a). The key factor is whether the ALJ still would find the claimant disabled if the drug or alcohol use stopped. *Id.* §§ 404.1535(b)(1), 416.935(b)(1). To make this determination, the ALJ evaluates which of the claimant's current physical and mental limitations would remain if the claimant stopped using drugs or alcohol and then determines whether any or all of the remaining limitations would be disabling. *Id.* §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ determines that the remaining limitations would not be disabling, then the ALJ will find that the drug addiction

or alcoholism is a material contributing factor, and a determination of disability is prohibited. *Id.* §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). The burden to prove that substance abuse is not a contributing factor material to his disability lies with the claimant. *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999).

<strong>V</strong>

<strong><u>Substantial Evidence Standard</u></strong>

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to

differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

**VI**

**Discussion**

Defendant contends that substantial evidence supports the ALJ's decision and that the ALJ properly evaluated Plaintiff's disability claim using the five-step sequential evaluation process outlined above in Part IV. The Court has carefully reviewed the ALJ's decision and the entire record. *See Matthews v. Comm'r, Soc. Sec.*, Civil Case No. ELH-13-1720, 2014 WL 1427182, at *1 (D. Md. Apr. 11, 2014) (citing *Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping analytical framework for judicial review of pro se action challenging adverse administrative decision, including (1) examining whether Commissioner's decision generally comports with regulations, (2) reviewing ALJ's critical findings for compliance with the law, and (3) determining from evidentiary record whether substantial evidence supports ALJ's findings)), *adhered to on denial of reconsideration*, 2014 WL 2738276 (D. Md. June 16, 2014). The Court notes that it should construe *pro se* pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972) (per curiam); *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000).

## A.   Steps One and Two

As noted in Part III above, the ALJ proceeded through all five steps of the sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. R. at 16. At step two, the ALJ found that Plaintiff's disorder of the cervical and lumbar spine was a severe impairment. R. at 16. The ALJ found that Plaintiff's alleged kidney failure was not a medically determinable impairment

because "there is no medical evidence establishing this condition, nor is there any record of treatment for it." R. at 16. The ALJ also found that Plaintiff's alleged pain in his bilateral knees and heels was not a medically determinable impairment because "there is no objective clinical or diagnostic evidence establishing any impairment of the knees or feet." R. at 17.

Plaintiff apparently contends, however, that the ALJ erred in finding that his kidney problem was not a medically determinable impairment, pointing to evidence in December 1992 of his diagnosis of "early renal colic" before his alleged onset date of disability. R. at 370, 372, 375, 409, 411. Abdominal X-rays were "within normal limits," however. R. at 377, 382. In October 2011, Dr. Colley noted that Plaintiff's kidney failure had not gotten worse. R. at 353. In any event, "[a] diagnosis that a person suffers from a condition or disease does not establish disabling functional limitations." *Carringer v. Colvin*, No. 2:13-CV-00027-MOC, 2014 WL 1281122, at *5 (W.D.N.C. Mar. 27, 2014). Because Plaintiff does not point to any evidence in the record of any functional loss as a result of this condition or to any evidence that this condition significantly limits his ability to do basic work activities, his contention that the ALJ erroneously considered his alleged kidney failure is unavailing. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) (indicating that a diagnosis is insufficient to establish disability, as "[t]here must be a showing of related functional loss").

Plaintiff further maintains apparently that the ALJ erred in finding a lack of objective evidence establishing any impairment of his knees or feet. Dr. Colley's October 2011 consultative examination revealed, however, "[n]ormal gait and station with good cadence and foot placement[,] i.e. heel-toe movement. No limp." R. at 354. Dr. Colley also noted that Plaintiff was "able to come up on his heels and toes without difficulty" and "demonstrated an erect and functional posture. No ambulatory aide [sic] required." R. at 354. Dr. Colley further

13

noted Plaintiff's ability to sit, stand, squat, stoop, carry, and climb stairs. R. at 354. Substantial evidence thus supports the ALJ's finding regarding that Plaintiff's alleged pain in his bilateral knees and heels were not medically determinable impairments. For these reasons, substantial evidence supports the ALJ's finding at step two of the sequential evaluation process.

**B.     Step Three**

"The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.' A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1. "[A]n ALJ only has to identify a listing and compare the evidence to the listing requirements where there is ample evidence to suggest that the listing is met." *Sterrette v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-15-1850, 2016 WL 953225, at *2 (D. Md. Mar. 11, 2016) (citing cases). In this regard, at step three, the ALJ found that there was no medical opinion of record to support a finding that Plaintiff's impairments met or equaled a listed impairment. R. at 17. Plaintiff neither argues that the ALJ erred in finding that he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1, nor points to any evidence that the criteria of any listed impairment were met. Substantial evidence supports the ALJ's finding that "[t]here is no medical opinion of record to support a finding that [Plaintiff's] impairments meet or equal a listing." R. at 17; *see* R. at 90.

**C.     Step Four**

Before considering step four, the ALJ found Plaintiff's RFC to be limited to less than the full range of light work with a sit-stand option. R. at 17. In so finding, the ALJ invoked the two-

part process for evaluating a claimant's subjective complaints and considered whether Plaintiff's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms were credible (R. at 17-19). *See Dunn v. Colvin*, 607 F. App'x 264, 272-73 (4th Cir. 2015). Whether "a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 272 (quoting *Craig*, 76 F.3d at 594). "At this stage of the inquiry, the pain claimed is not directly at issue; the focus is instead on establishing a determinable underlying impairment—a statutory requirement for entitlement to benefits—which could reasonably be expected to be the cause of the disabling pain asserted by the claimant." *Id.* at 272-73 (quoting *Craig*, 76 F.3d at 594). Second, after the first inquiry is complete, the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." *Craig*, 76 F.3d at 595; *see* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). "[T]his evaluation must take into account not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.) . . . ." *Craig*, 76 F.3d at 595 (citation omitted); *see* 20 C.F.R. §§ 404.1529(c)(1)-(2), 416.929(c)(1)-(2). The ALJ must also take into account "any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Craig*, 76 F.3d at 595; *see* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see* SSR 16-3p, 2016 WL 1119029, at *3-12 (Mar. 28, 2016).

15

Here, the ALJ found that Plaintiff's "allegations are not considered fully credible because there is just not sufficient medical evidence to support them" (R. at 18), noting the results of examinations by Drs. Colley and Fechter and treatment records in February 2012 (R. at 18), as well as the fact that Plaintiff did not seek free or low-cost care in the area, despite the lack of medical insurance, suggesting that his impairments were not as severe as he alleged (R. at 19). Although a claimant may not be penalized for failing to seek treatment he cannot afford, *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986), as "[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him," *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir.1984), "[a]n absence of evidence that a claimant sought low-cost or free care may warrant discrediting his excuse that he could not afford treatment." *Buchholtz v. Barnhart*, 98 F. App'x 540, 546 (7th Cir. 2004) (citing *Osborne v. Barnhart*, 316 F.3d 809, 812 (8th Cir. 2003)); *see Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (ALJ appropriately discounted claimant's argument he could not afford medical care absent evidence he sought and was denied low-cost or free care); *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (Luttig, J., concurring) (stating that "an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility" and holding that "it was not improper for the ALJ to consider the level and type of treatment [the claimant] sought and obtained in determining what weight to accord her allegations of constant disabling pain"); SSR 16-3p, 2016 WL 1119029, at *8-9.   Contrary to Plaintiff's assertion, he points to no evidence of "X-rays and blood and urine analysis" that supports his disability claim, and he "has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of his disability claim." *Reid v. Comm'r of Soc. Sec.*, 769

16

F.3d 861, 865 (4th Cir. 2014).  Plaintiff's additional argument that the ALJ erred in rejecting the opinions of "treating physicians" in favor of the opinion of the consultative examiner also is unavailing, as he does not point to any treating source's opinion about his functional limitations. The Court thus finds that substantial evidence supports the ALJ's discounting of Plaintiff's subjective complaints of disabling symptoms and limitations, as well as the weight the ALJ gave to the opinion evidence.

As noted previously, the Court's function is neither to review Plaintiff's claims *de novo* nor to reweigh the evidence of record.  The Court instead must determine whether, upon reviewing the whole record, the Commissioner's decision is supported by substantial evidence and a proper application of the law.  Under that standard and in light of the evidence cited by the ALJ, the Court finds no error in the ALJ's RFC assessment from which the ALJ found that Plaintiff could not perform any past relevant work at step four (R. at 19).  *See Matthews*, 2014 WL 1427182, at *2.

**D.      Step Five**

At step five, the ALJ considered whether Plaintiff could perform other work in the national economy in light of the ALJ's assessment of Plaintiff's RFC.  R. at 19-20.  Because the ALJ found that additional limitations impeded Plaintiff's ability to perform all of the requirements of light work, the ALJ elicited testimony from a VE (R. at 19-20, 35-40).  *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).  "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments."  *Id.* (citation omitted); *see Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (per curiam) (noting that hypothetical question is unimpeachable if it adequately

reflects RFC for which ALJ had sufficient evidence (citing *Johnson*, 434 F.3d at 659)). "Moreover, it is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert." *Fisher*, 181 F. App'x at 364.

Here, the VE testified that jobs such as a general office helper, machine tender, and laundry worker existed in the economy for an individual such as Plaintiff limited to the RFC assessed by the ALJ. The VE properly testified from his own experience that these jobs provided a sit-stand option. *See Zarkowski v. Barnhart*, 417 F. Supp. 2d 758, 767 (D.S.C. 2006). The VE's testimony thus provides substantial evidence to support the ALJ's finding that Plaintiff was not disabled because of the significant number of jobs in the economy that he could perform. *See Walls*, 296 F.3d at 291-92; *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) ("We do not think that the approximately 110 jobs testified to by the vocational expert constitute an insignificant number.").

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 21) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 20) is **DENIED**. The Commissioner's final decision is **AFFIRMED**. A separate order shall issue.

Date: September 27, 2016

_____/s/_____
Thomas M. DiGirolamo
United States Magistrate Judge